IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

Anthony T. Woods,

    Plaintiff,

vs.                                          No.  3:15-cv-597-DRH-SCW

Southern Illinois University Carbondale

    Defendant.

## ORDER

**HERNDON, District Judge:**

### I.  INTRODUCTION

This matter is before the Court on defendant Southern Illinois University's ("SIU") motion to dismiss plaintiff Anthony T. Woods' complaint for failure to state a claim (Doc. 17, Doc. 18). Mr. Woods has responded (Doc. 27). Based on the record and the following, the motion is **GRANTED.**

### II.  BACKGROUND

**A. Complaint**

On May 29, 2015, Mr. Woods filed a *pro se* Employment Discrimination Complaint against SIU. The Court construes Mr. Woods' complaint as attempting

to assert two Title VII claims against SIU – one for racial harassment and one for retaliation.

Mr. Woods attached the following to his complaint: (1) a letter from Linda McCabe Smith, Ph.D., SIU's Associate Chancellor for Institutional Diversity, which sets out Plaintiff's allegations of harassment and the results of SIU's internal investigation into those allegations, (2) his EEOC Charge, and (3) his EEOC Intake Questionnaire, in which his Letter of Concern is included.

### B. EEOC Filings

Mr. Woods' Intake Questionnaire was signed on June 13, 2014 and stamped as received by the EEOC on June 16, 2014. In his Intake Questionnaire, Mr. Woods checked the box indicating he had been discriminated against by SIU because of his race. He did not mark the additional box indicating that he was alleging unlawful retaliation.

The Letter of Concern attached to Mr. Woods Intake Questionnaire relays, in relevant part, the following:

- On November 17, 2013, during a lunch break, Mr. Woods, Randy [a white co-worker], Eric [Shuler] [a white sub-foreman], and Lamont [an African American co-worker) were engaged in a conversation regarding the type of language that is allowed and/or is offensive. During the conversation, Randy used the term "nigger" twice.

- Incidents occurring in April and May 2014 involving sub-foreman Eric Shuler and another individual identified only as "Travis" that Mr. Woods considered offensive, including: removing Mr. Woods' earplugs, calling him names like "dip shit" and "stink bait", hitting him with a rolled up newspaper, and making a joke about Mr. Woods' using marijuana.

- Alleged unfair treatment by sub-foreman Eric Shuler and an individual identified only as "Ben" regarding clocking in late and inconsistent statements regarding a clocking in late "grace period."

- On May 20, 2014, Mr. Woods alleges the following occurred:

  I told Shawn that I'm going to start writing everything down (that happens at work) after hearing him say that he does that same thing. Then once we were back in the chemical room he called me a "Bitch" in which I replied that if he thinks I'm bitch then I'm better at showing him.

- On May 22, 2014, Mr. Woods alleges the following occurred:

  Kevin tried to get me to say "Cracker" as if it's okay with him, he then asked [sub-foreman Eric Shuler] to come by in which [sub-foreman Eric Shuler] stated that it would be okay to say depending on who you are. He goes on to say that Anthony can use the "N" word but that he can't use the 'n' word.

- Mr. Woods further alleges that, as of June 6, 2014, the following is true:

  [W]ork has been hostile beyond belief since I spoke with Darrell (the union representative).[1] After speaking with Darrell at approximately 0100, Ben came into the locker room and asked me if I called Darrell or not for the reason why he showed up. I told Ben I did not call Darrell as that is the truth I did not call him. I text Darrell, but I thought that bosses are not supposed to ask employees that question. I've called in several days since the incidents due to my health not being where it needs to be right now. Even as a disabled veteran I'm dealing with health concerns that are being compounded by the situation at work. I feel as though I'm being discriminated against and harassed at my job. I've been ridiculed and made fun of for being a vegan which is part of my religion. I've been insulted by being called several offensive words and one of the words discriminates against my race. I really hope and pray

---

[1] Although not stated in the Intake Questionnaire, the Charge indicates that Mr. Woods contacted his union representative on May 20, 2014.

> that through all that I'm having to deal with that someone can help me put an end to this situation. I understand that no one at work has to speak to me and that's fine but when you keep hearing snitch this, pig that and rat this – it becomes difficult to even want to show up to work. But as Ben stated, "I don't care if you quit, he said this after stating that the employees don't come to him first so he can help then he doesn't care. OK, so what if you are not comfortable talking to him and decide to go directly to the union after having talks with Eric, Travis and Ben about things that have been going on at work.

On August 15, 2014, Mr. Woods filed a Charge of Discrimination ("Charge") against SIU with the Equal Employment Opportunity Commission ("EEOC"), stating as follows:

> I was hired by the above named employer on November 10, 2013 as a Building Service Worker. My immediate supervisor is Eric Shuler, Sub Foreman, white.
>
> On November 17, 2013 during lunch break, Eric Shuler, Sub Foreman, white, Randy (LNU), Building Service Worker, white, Lamont (LNU),Building Service Worker, black, and myself, were having a conversation relative to comments/words that may be considered offensive. Randy then stated that he could call me a "nigger" because he has a black friend that he is allowed to call "nigger" and his friend is allowed to call him "cracker." I was shocked to hear this comment and shook my head and told Randy that I was uncomfortable with what he said, yet Eric Shuler, Sub Foreman, white, said nothing and laughed. Later on that same day while in the bathroom, Randy again made reference to him calling his friend a "nigger." I did not make an internal complaint of discrimination at that time because I was still a probationary employee. However, on May 20, 2014 I complained of the racial slurs to Dornell (LNU), Union Rep, who subsequently referred me to the Associate Chancellor for Institutional Diversity, to whom I made a complaint on June 11, 2014. After making the complaint I was told that an investigation would be conducted but to date I have been given no results.

> I believe that I have been discriminated against due to my race, black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

In his Charge, Plaintiff marked the box indicating that he had been discriminated against because of his race, but did not mark the box for a retaliation claim.

### III.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed.R.Civ.P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## IV. ANALYSIS

### A. Scope – Retaliation Claim

Mr. Woods' Complaint states as follows: "Once I made a mention that on or around May 20th, 2014 I would report unfavorable treatment the harassment started. It went on until basically my Dr. recommended that I take time off. Dr. statements go back to approx. 11/27/2013 which is approx. 10 days after the above incident [referring to the November 17, 2013 incidents]." The Court construes this allegation as an attempt to assert a Title VII claim for retaliation.

A plaintiff in a Title VII case "may bring only those claims that were included in his EEOC charge or that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Swearingen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (internal quotation marks omitted). The purpose of the limitation is to ensure that employers have "some warning of the conduct about which the employee is aggrieved, and it affords the agency and the employer an opportunity to attempt conciliation without resort to the court." *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110 (7th Cir. 1992).

Here, the Charge filed with the EEOC contains no mention of retaliation. Mr. Woods did not check the box for retaliation and the factual allegations in the Charge do not contain any assertions related to retaliation. Rather, the Charge addresses only the claim of racial harassment. Under settled precedent, the racial harassment allegations in the Charge are not like or reasonably related to the

retaliation claim in this litigation. *See Swearingen–El v. Cook County Sheriff's Dep't*, 602 F.3d 852, 864–65 (7th Cir. 2010) ("Normally, retaliation and discrimination charges are not considered like or reasonably related to one another.") (internal quotation marks omitted); *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 545 (7th Cir. 1988) ("[Plaintiff's] retaliation claim injects an entirely new theory of liability into the case alleging unlawful activity of a much different nature than the age discrimination alleged in the charge.").

This, however, does not end the Court's inquiry. Mr. Woods' Intake Questionnaire contains factual assertions that arguably indicate Mr. Woods was interested in pursuing a retaliation claim. Specifically, in his Letter of Concern, Mr. Woods details work-place harassment in relation to communicating with his union representative about racial harassment. Accordingly, if the Court can consider the allegations in Mr. Woods' Intake Questionnaire and Letter of Concern, Mr. Woods' retaliation claim *might* be saved.

As a general matter, intake forms and questionnaires are insufficient to satisfy the charge-filing requirement. *See Novitsky v. American Consulting Engineers, L.L. C.*, 196 F.3d 699, 702 (7th Cir. 1999) ("Under the statute, however, it is the charge rather than the questionnaire that matters. Only the charge is sent to the employer, and therefore only the charge can affect the process of conciliation."). In *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008), the Supreme Court relaxed this requirement, holding that an intake form may be construed as a "charge" where

the intake form contains sufficient detail and can reasonably be construed as a request by the employee for agency action. *Id*. at 405, 128 S.Ct. 1147.

There is, however, an important distinction between *Holowecki* and the instant case. In *Holowecki,* the plaintiff filed an intake questionnaire and a supplemental affidavit before filing her lawsuit. *See id*. at 394, 406, 128 S.Ct. 1147. She did not file a formal charge until after her complaint had been filed. *Id.* In the instant case, the plaintiff filed an Intake Questionnaire (along with a Letter of Concern) and then, approximately two months later, filed a timely formal charge, all before commencing this lawsuit. The Seventh Circuit has implied – but not held – that this distinction is significant. *See Wojtanek v. Pactiv LLC*, 492 Fed.Appx. 650, 653 (7th Cir. 2012) (unpublished) ("Although the Supreme Court has held [in *Holowecki* ] that in some circumstances even an intake questionnaire can constitute a charge of discrimination, … *the Court has not addressed the situation where the plaintiff has signed a formal charge of discrimination that narrows the allegations presented to agency officials*.") (emphasis added). *See also Tamayo v. Blagojevich,* 526 F.3d 1074, 1089 (7th Cir. 2008) (decided 3 months after *Holowecki*) (rejecting contention that defendant was on notice of the plaintiff's charge where defendant was named in questionnaire but not in subsequently filed charge and stating "[a]ssertions in the questionnaire, without more, are not enough to put the [defendant] on notice that it was being charged.")

Although not controlling, the Tenth Circuit and the Third Circuit have both concluded that a claim listed in an intake questionnaire is not exhausted where a subsequently filed, timely charge does not include that claim. *Barzanty v. Verizon*

*PA, Inc.*, 361 Fed.Appx. 411, 415 (3d Cir. 2010) ("A plaintiff cannot be allowed to transfer the allegations mentioned only in the questionnaire to the charge itself. Not only would this be circumventing the role of the [EEOC], but it would be prejudicial to the employer."); *Green v. JP Morgan Chase Bank Nat. Ass'n*, 501 Fed.Appx. 727, 731 (10th Cir. 2012) (agreeing with *Barzanty* and stating "it would defeat the statutory scheme to find exhaustion where an employee includes a claim in the intake questionnaire, but then omits it in a timely subsequent formal charge that forms the basis for the administrative proceedings").

Considering the Seventh Circuit's post-*Holowecki* decisions and the reasoning in *Green* and *Barzanty* (which the Court finds persuasive), the Court concludes claims in Mr. Woods' Intake Questionnaire and Letter of Concern cannot be transferred to his timely, subsequently filed Charge. To do so under the circumstances of this case would prejudice SIU and would circumvent the role of the EEOC.[2]

Since Mr. Woods' retaliation claim does not set forth the same conduct alleged in his Charge or sufficiently grow from the allegations set forth in the Charge, the retaliation claim is not reasonably related to the Discrimination Charge. Therefore, SIU's motion to dismiss the retaliation claim is **GRANTED**.

A dismissal for failure to bring an employment discrimination claim in an EEOC charge is grounded in failure to exhaust. *See Teal v. Potter*, 559 F.3d 687,

---

[2] Seventh Circuit jurisprudence indicates that some additional factors may warrant looking beyond the face of the charge. For instance, inequitable conduct on the part of the EEOC might justify considering allegations included in a questionnaire but not in a charge. *See Novitsky v. American Consulting Engineers, L.L.C.*, 196 F.3d 699, 702-03 (7th Cir. 1999). Such conduct is not alleged in the instant case.

693 (7th Cir. 2009). The Seventh Circuit has explained that a dismissal for failure to exhaust should be without prejudice. *See e.g., Greene v. Meese*, 875 F.2d 639, 643 (7th Cir.1989). Accordingly, the instant dismissal is without prejudice. That said, given the time that has passed, there may be no practical difference between a dismissal with prejudice and a dismissal without prejudice of Mr. Woods' unexhausted retaliation claim.

### B. Racial Harassment

To state a valid claim for racial harassment under Title VII, a plaintiff must establish the following: (1) He was harassed because of his race; (2) his work environment was objectively and subjectively offensive; (3) the conduct of which he complains was severe or pervasive; and (4) some basis for employer liability. *Vance v. Ball State Univ.*, 646 F.3d 461, 469 (7th Cir. 2011), aff'd 133 S. Ct. 2434 (2013). To determine whether conduct meets the third element, the Court must look to the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Russell v. Bd. of Trs. of Univ. of Illinois at Chicago*, 243 F.3d 336, 343 (7th Cir. 2001) (*quoting Smith v. Sheahan*, 189 F.3d 529, 533–34 (7th Cir.1999)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (internal

quotation marks omitted) (citations omitted). Further, occasional or sporadic racial slurs or epithets will not alone support a harassment claim under Title VII. *North v. Madison Area Ass'n for Retarded Citizens–Developmental Centers Corp.*, 844 F.2d 401, 409 (7th Cir. 1988).

SIU argues the plaintiff's allegations demonstrate (1) the plaintiff was not harassed *because of his race*; (2) the allegedly wrongful conduct does not meet the severe or pervasive standard; and (3) there is no basis for employer liability.

Mr. Woods' Complaint includes three paragraphs in support of his claim. The first paragraph repeats the allegations contained in his Charge relating to two conversations occurring on November 17, 2013 involving use of the word "nigger." In the first conversation, Mr. Woods and other employees were engaged in a conversation regarding terms that are considered offensive. During the conversation, a white co-worker (Randy) used the term "nigger" twice. The second conversation occurred later in the day when Mr. Woods and Randy were alone in the bathroom. At this time, Randy proceeded to explain why he thought it was okay for him to use the term "nigger." The second paragraph claims he was harassed after mentioning, on May 20, 2014, he was going to report "unfavorable treatment." The third paragraph states that discrimination based on race and any form of harassment is illegal, concluding that supporting facts are contained in SIU's findings of its own investigation which is attached to the complaint ("SIU's Letter").

A majority of the conduct described in SIU's Letter amounts to race-neutral horseplay, teasing, and/or verbal abuse between coworkers. There is nothing

inherently racial about the incidents and they do not indicate that Mr. Woods was harassed because of his race. Indeed, the actions could have been (and according to Mr. Woods' allegations, in some instances actually were) directed at other employees regardless of skin color.

Setting aside the racially-neutral conduct, Mr. Woods' racial harassment claim is premised only on his allegation that on two days (November 17, 2013 and May 22, 2014) the term "nigger" was used in his presence. Although the alleged conduct was certainly insensitive and offensive, it is insufficient to state a claim for racial harassment under Title VII.

First the offensive word was used in Mr. Woods' presence on two days nearly six months apart. *See Ford v. Minteq Shapes & Servs., Inc.,* 587 F.3d 845, 848 (7th Cir. 2009) ("Title VII is not … a general civility code and will not find liability based on the sporadic use of abusive language.") (internal quotations and citation omitted)*; Sanders v. Village of Dixmoor*, Ill., 178 F.3d 869, 869-70 (7th Cir. 1999) (holding that the plaintiff's supervisor's statement, "N……, you're suspended," was insufficient on its own to establish racial harassment actionable under Title VII); *North v. Madison Area Ass'n for Retarded Citizens-Developmental Ctrs. Corp.*, 844 F.2d 401, 409 (7th Cir. 1988) ("[O]ccasional or sporadic uses of racial slurs or epithets will not in and of themselves support an actionable claim of racial harassment under Title VII."). Second, the term was never directed at Mr. Woods. Rather, the term was used while co-workers were voluntarily engaged in conversations regarding words that are considered

offensive. *See Smith v. Nw. Ill. Univ.*, 388 F.3d 559, 566 (7th Cir. 2004) (holding that the plaintiff could not establish an objectively hostile work environment based on one incident where a white coworker referred to two other coworkers as "black motherf......" and other incidents, which the plaintiff subsequently learned about, where the white coworker used the word "n......." to describe other coworkers); *Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 639 (7th Cir. 2001) (noting that a negative statement by the plaintiff's coworker about interracial dating "made in the context of random office banter" and not directed at the plaintiff was insufficient evidence of racial discrimination). Third, the word was used by Mr. Woods' co-worker and not by a supervisor. *See Rodgers,* 12 F.3d at 675 ("[A] supervisor's use of the term impacts the work environment far more severely than use by co-equals.").

Considering the totality of the circumstances, while the alleged conduct may indicate the presence of racially insensitive co-workers, it is not sufficiently severe or pervasive. Accordingly it does not, as a matter of law, rise to the level of a racial harassment claim under Title VII.[3] Therefore, the Court **GRANTS** SIU's motion to dismiss with prejudice the racial harassment claim for failure to state a claim.

## V.  CONCLUSION

For the reasons discussed herein, the motion to dismiss is **GRANTED.** The retaliation claim is dismissed without prejudice for failure to exhaust administrative remedies. The racial harassment claim is dismissed with prejudice

---

[3] This finding negates any need to assess whether Mr. Woods claim sufficiently alleges employer liability.

for failure to state a claim. Further, in light of this ruling, SIU's motion for summary judgment (Doc. 33) is **DENIED** as **MOOT**. This matter closes the case and the Court **DIRECTS** the Clerk to enter judgment accordingly.

    **IT IS SO ORDERED.**

    Signed this 7th day of September, 2016.

Judge Herndon
2016.09.07
14:30:09 -05'00'

**United States District Judge**